IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JEROLD AUST, *et al.*,          :
          :
    Plaintiffs,         :
          :
vs.            : CIVIL ACTION NO. 13-00629-KD-B
          :
THE TERMINIX INTERNATIONAL    :
COMPANY, LP, *et al.*,       :
          :
    Defendants.        :

## REPORT AND RECOMMENDATION

This case is before the Court on the Motion to Remand filed by Plaintiffs Jerold Aust and Mary Anne Aust. (Doc. 8). The motion, which has been fully briefed and is ripe for resolution, has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c). Upon consideration of all matters presented, the undersigned **RECOMMENDS**, for the reasons stated herein, that Plaintiff's Motion to Remand (Doc. 8) be **GRANTED**, and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama.

## I. Background Facts

Plaintiffs Jerold Aust and Mary Anne Aust (hereinafter "Plaintiffs") commenced this action in the Circuit Court of Mobile County, Alabama on November 19, 2013. Plaintiffs assert claims for negligence, recklessness, fraud, breach of contract,

and equitable relief against Defendants The Terminix International Company L.P., Terminix International, Inc. (collectively "Terminix"), and Ken Stroh for damages arising out of Defendants' alleged misconduct in connection with a termite bond issued by Defendants on Plaintiffs' residence. (Doc. 1-1).

Plaintiffs allege that they purchased their home in 1999. At the time of the purchase, Plaintiffs' home was under a termite bond contract with C&R Exterminators ("C&R"). (Id. at 3). Subsequent to Plaintiffs' purchase, Terminix acquired C&R and became a party to the contract with Plaintiffs by way of an assignment. (Id.). On June 23, 1999, Terminix issued its own termite bond on Plaintiffs' home. (Id. at 4). On January 28, 2005, Terminix issued a Formosan Termite Addendum on Plaintiffs' home, and Plaintiffs' renewal premiums increased as a result. (Id. at 4-5). Terminix continued to issue new termite bonds every year from 1999 through 2012. In December 2012, Plaintiffs discovered evidence of a possible termite infestation in their home. (Id. at 7, 11).

On November 19, 2013, Plaintiffs filed suit against Defendants in the Circuit Court of Mobile County, Alabama. (Doc. 1-1). On December 20, 2013, Defendants filed a Notice of Removal under 28 U.S.C. §§ 1441 and 1446 on the basis of diversity jurisdiction. (Doc. 1). On January 21, 2014, Plaintiffs filed the instant Motion to Remand this action to the

Circuit Court of Mobile County, Alabama.  (Doc. 8).

## II. **Analysis**

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction.  See Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005) ("[I]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.") (citation omitted).  Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  See University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999).  "[T]here is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."  Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1050 (11th Cir. 2001).

As discussed, *supra*, this action was removed by Defendants, The Terminix International Company L.P., Terminix International, Inc., and Ken Stroh pursuant to 28 U.S.C. §§ 1441[1] and 1446[2] on

---

[1] Title 28 U.S.C. § 1441(a) provides, in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts

(Continued)

the basis of diversity of citizenship under 28 U.S.C. § 1332.
Where the alleged basis for federal jurisdiction is diversity
under § 1332, the removing defendant has the burden of
demonstrating that there is (1) complete diversity of
citizenship and (2) an amount-in-controversy greater than
$75,000. See 28 U.S.C. § 1332(a); see also University of South
Alabama, 168 F.3d at 412 ("Where jurisdiction is predicated on
diversity of citizenship, all plaintiffs must be diverse from
all defendants.").[3]

---

of the United States have original
jurisdiction, may be removed by the
defendant or the defendants, to the district
court of the United States for the district
and division embracing the place where such
action is pending.

[2] Title 28 U.S.C. § 1446(b) provides:

The notice of removal of a civil action or
proceeding shall be filed within 30 days
after the receipt by the defendant, through
service or otherwise, of a copy of the
initial pleading setting forth the claim for
relief upon which such action or proceeding
is based, or within 30 days after the
service of summons upon the defendant if
such initial pleading has then been filed in
court and is not required to be served on
the defendant, whichever period is shorter.

[3] The parties do not dispute that the amount in controversy
requirement has been met, nor do they dispute the timeliness of
Defendants' removal. The dispute in this case centers solely on
the diversity requirement.

In this action, Plaintiffs allege that removal is improper because the Court lacks complete diversity. The parties agree that Defendants, The Terminix International Company L.P. and Terminix International, Inc., are citizens of Delaware and Tennessee for purposes of determining diversity jurisdiction,[4] and that Plaintiffs and Defendant Ken Stroh are each citizens of the State of Alabama, a fact which, on its face destroys diversity. However, Defendants argue that Plaintiffs have fraudulently joined Ken Stroh as a defendant in this case in an effort to defeat complete diversity; thus, his citizenship cannot be considered for purposes of determining diversity jurisdiction.

"The determination of whether a resident defendant has been

---

[4] Terminix International, Inc. is incorporated in the State of Delaware and has its principal place of business in Tennessee. (Doc. 1 at 2). Thus, it is a citizen of Delaware and Tennessee. See MacGinnitie v. Hobbs Group, LLC, 420 F.3d 1234, 1239 (11th Cir. 2005) ("For diversity purposes, a corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business."). Further, Terminix International Company L.P. is a limited partnership with one general partner, Terminix International Inc. (which is a citizen of Delaware and Tennessee), and one limited partner, ServiceMaster Consumer Services Limited Partnership (which has one general and one limited partner, both of which are corporations incorporated under the laws of the State of Delaware with their principal place of business in Tennessee). (Doc. 1 at 3). Thus, Terminix International Company L.P. is a citizen of Delaware and Tennessee. See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1021 (11th Cir. 2004) (a limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens).

fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998) (emphasis added). The proceeding appropriate "for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 n.9 (5th Cir. 1981)). In such a proceeding, the district court must "resolve all questions of fact ... in favor of the plaintiff." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Additionally, any uncertainties about substantive state law must be resolved in favor of the Plaintiff. Crowe, 113 F.3d at 1538.

Under Eleventh Circuit precedent, joinder is fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998); accord

<u>Loop v. Allianz Life Ins. Co. of North America</u>, 2009 U.S. Dist.
LEXIS 313222009, *10, 2009 WL 981988, *4 (S.D. Ala. 2009).

In the instant case, Defendants rely on the first prong of
the <u>Triggs</u> analysis and argue that that there is no possibility
that Plaintiffs can prove a cause of action against Defendant
Stroh.  Specifically, Defendants argue that under Alabama law, a
corporate agent may be held individually liable only if he
"personally participates" in a tort, and nowhere do Plaintiffs
allege that Stroh personally participated in the allegedly
deficient services performed at Plaintiffs' home.  (Doc. 14 at
2).

To the contrary, a review of the complaint reveals that
Plaintiffs have alleged personal participation by Defendant
Stroh, stating, *inter alia*, that Defendant Stroh is a "licensed
permittee" of Terminix charged with the responsibility of
supervising the work performed by Terminix's technicians;[5] that

---

[5] The parties refer to Stroh's designation interchangeably as
"licensed permittee," "certified operator," and "certified
person." (Doc. 8 at 7; Doc. 8-2; Doc. 14 at 1). The record
contains the deposition testimony of David Meyers, an executive
with Terminix, who testified that in Alabama, Terminix is
required to have an individual in each office who is charged
with running the office in compliance with state pest control
regulations.  (Doc. 8-1 at 8, 9).  In addition, the record
contains the affidavit testimony of Thomas Campbell, attorney
for Plaintiffs, stating that his investigation revealed that
during the relevant period, Ken Stroh was the "certified
permittee/operator" in charge of the pest control services being
performed at Plaintiffs' home.  (Doc. 8-3 at 3-4). Plaintiffs
(Continued)

Terminix technicians "never spent the time necessary to adequately inspect [Plaintiffs'] home" for termites; that the technicians "spent only a few minutes at each annual inspection" as part of "a state-wide pattern of deficient annual inspections that the *managers* and executives knew were occurring based on the headcount utilized in the offices, and tracking software and other programs and processes used to figure out what technicians were doing and how much time they were spending doing it;" that these activities have been known by all Defendants, including Stroh,[6] and have been sanctioned, ratified, and approved by all Defendants; that the Defendants, including Stroh, owed and breached their common law, statutory, and regulatory duties to implement quality control practices and procedures designed to identify and correct deficiencies in the service protocols, as well as their duties to warn, hire, train, supervise, and discipline their employees engaged in providing structural pest control services. (Doc. 1-1 at 2; 9-10, 12-14). Through these assertions, Plaintiffs have alleged direct, not merely

---

also point to a document dated April 2013 identifying Ken Stroh as the "certified person" in charge of the Terminix Office that serviced Plaintiffs' home. (Doc. 8-2).

[6] "When multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." Crowe, 113 F.3d at 1539.

vicarious, liability against Defendant Stroh for his negligent acts and omissions that allegedly resulted in damage to Plaintiffs.

The question before the Court, then, is whether these facts state even an *arguable* cause of action under Alabama law. Defendants are correct that, under Alabama law, "[a] corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort." Ex parte Kohlberg Kravis Roberts & Co., L.P., 78 So. 3d 959, 976-77 (Ala. 2011) (citations omitted). Moreover, the "[Alabama] Supreme Court has recognized the torts of negligent training and negligent supervision." See Galactic Employer Services, Inc. v. McDorman, 880 So. 2d 434, 445 (Ala. Civ. App. 2003)(Murdock, J., concurring in the result) (citing cases). As Defendants point out, in the context of vicarious liability, Alabama law is settled that "the [common law] tort of negligent hiring, [retention], supervision, and training necessarily runs against the employer only," not against a supervisor for his negligence in supervising or training a subordinate. See Hill v. Madison County School Bd., 957 F. Supp. 2d 1320, 1344-45 (N.D. Ala. 2013); see also Ware v. Timmons, 954 So. 2d 545, 555 (Ala. 2006) ("as a matter of law, the doctrine of respondeat superior does not hold supervisors, as co-employees, vicariously liable for the torts of their subordinates [since] [s]upervisors lack the

ability to willingly choose to enter into a relationship with their subordinates; likewise subordinates do not have the ability to choose to enter into a relationship with their supervisors.").

On the other hand, in the context of *direct* liability for a supervisor's own negligence, the court in Ramsey v. Gamber, 2011 U.S. Dist. LEXIS 11893, *9 n.1, 2011 WL 486139, *3 n.1 (M.D. Ala. 2011) noted that, although the plaintiff had not asserted a claim for failure to supervise, "[m]anagers can be held *directly* liable for negligent supervision of subordinates." Id. (citing Big B, 634 So. 2d at 1003 (emphasis added); see also Kennemer v. McFann, 470 So. 2d 1113, 1118-19 (Ala. 1985) (co-employee liability case holding that supervisory defendants can be held directly liable for negligence if they "had [personal] first-hand knowledge" of the violation of company safety requirements, which ultimately caused the injuries suffered by the plaintiff at the hands of a subordinate). Thus, it is at least *arguable* that Plaintiffs could state a direct claim for negligence against Defendant Stroh under Alabama common law for negligent supervision, training, and/or failure to implement and enforce safety procedures and protocols, particularly given Plaintiffs' allegations that Stroh knew about the "pattern of deficient annual inspections" that the technicians were performing at Plaintiffs' home. (Doc. 1-1 at 9-10).

Plaintiffs further allege that Alabama statutory regulations governing the pest control industry in Alabama imposed a statutory duty on Defendant Stroh, as the designated "certified operator," to oversee, supervise, and ensure the quality of work performed on Plaintiffs' home by Terminix's technicians. Plaintiffs allege that, by statute, Terminix is required to designate an individual (such as Stroh) to oversee the work performed by the technicians and to ensure compliance with state pest control laws. (Doc. 1-1 at 2, 14). Thus, Plaintiffs seek to hold Stroh, the licensed permittee/certified operator[7] directly liable for breaching his statutory duty to oversee, supervise, and ensure the quality of work performed on Plaintiffs' home pursuant to Alabama's Termite Code, ALA. CODE § 2-28-1, *et seq*. (the "Termite Code") and the rules and regulations promulgated by the Alabama Department of Agriculture and Industry (the "ADAI") pursuant to the Termite Code, ALA. ADMIN. CODE r. 80-10-9-.01, *et seq*.[8]

---

[7] As noted above, Terminix's Division Vice-President, David Myers, testified that Terminix has an individual in each office in Alabama who is designated "to follow the[] regulations to the letter." (Doc. 8-1 at 9).

[8] Pursuant to the Termite Code:

> The commissioner with the approval of the State Board of Agriculture and Industries may adopt and promulgate rules and regulations that are reasonable and

(Continued)

As discussed above, Plaintiffs maintain that during the relevant time period, Stroh was the licensed permittee/certified operator/certified person for the Terminix office that serviced Plaintiffs' home.[9] (Docs. 8-2; 8-3 at 3). The term "certified operator" has similar definitions under both the Termite Code and the rules and regulations promulgated thereunder. Under the Termite Code, the designation is defined as "[a] person who has been certified by the commissioner as qualified to supervise the operation of a main office or a branch office[,]" ALA. CODE § 2-28-1(8), while the regulations describe the certified operator

---

> necessary to carry out the intent and
> purpose of this chapter and to regulate
> persons engaged in professional services or
> defined in this chapter to prevent
> fraudulent and unauthorized practices of
> those professional services or work.

ALA. CODE § 2-28-3. In addition, Alabama Administrative Code, § 80-10-9-.03 requires persons desiring to engage in structural pest control work to obtain an annual permit from the commissioner in accordance with Ala. Code § 2-28-4. Once obtained, the Alabama Termite Code imposes a duty on permittees to perform structural pest control work with a "high quality of workmanship" and to maintain "a continued level of competence and ability." See ALA. CODE § 2-28-3.

[9] "Permittee" is defined by the applicable provision of the Alabama Administrative Code as "[t]he person issued a permit to engage in professional work or services at a particular business location covered under the provisions of the chapter." ALA. ADMIN. CODE r. 80-10-9-.02(29). A "business location" is, in turn, defined as "[a]ny location in or from which professional work or services are solicited, accepted or conducted." Id., r. 80-10-9-.02(5).

as "[a] person who has been certified by the examining board as qualified to supervise the operation of a main office or branch office." ALA. ADMIN. CODE r. 80-10-9-.02(7). Plaintiffs argue that as the licensed permittee/certified operator/certified person, Stroh had certain responsibilities imposed by the Termite Code and its implementing rules and regulations, such as ALA. ADMIN. CODE r. 80-10-9-.12(1), which provides, "[t]he permittee shall designate a supervisor, certified operator, or branch supervisor who shall be responsible for each main office, branch office, and suboffice. In order to provide adequate supervision of professional work or services performed, the permittee shall be responsible for the actions of the supervisor, certified operator and branch supervisor and such person's compliance with the chapter and regulations promulgated thereunder. The supervisor, certified operator, or branch supervisor shall be in charge of and actually participate in the operation of the office."

Specifically, Plaintiffs argue that:

> Defendant Stroh is responsible for Terminix's structural pest control work performed at Plaintiffs' home as alleged throughout the Complaint.
>
> Alabama Administrative law charges a Certified Operator with the responsibility to comply with Ala. Admin. Code § 80-10-9-.02(11), § 80-10-9-.19(1) and § 80-10-9-.20. Part of this duty, as described above, includes the duty to give advice and

prescriptions for control and eradication of termites and to adequately supervise the employees who are performing work in a particular branch. Hence, a Certified Operator like Stroh is not only responsible for ensuring performance of a label compliant treatment under Ala. Admin. Code 80-10-9-.20 every day the property is under a contract that promises to provide that service or which the law imposes if the contract is silent on the scope of treatment, but also that the company has complied with the additional minimum requirements for subterranean termite control under the subsections of Ala. Admin. Code 80-10-9-.20(1-8). It is exactly the failure to ensure compliance with minimum treatment standards required by pesticide labels, Terminix's MBRs, and the Alabama Admin. Code 80-10-9-.20 that Plaintiffs alleged in the complaint, including paragraphs 32 and 58, that was not performed and which the person believed to be the licensed permittee, Ken Stroh, failed to do.

(Doc. 8 at 9-10).

In opposition to Plaintiffs' motion to remand, Defendants offer Stroh's declaration in which he states that he did not hold the position of the designated certified operator for the branch office that serviced Plaintiffs' home in 1999 when Plaintiffs' termite bond contract was acquired from C&R Exterminators by Allied-Bruce, when Terminix first began servicing the account after acquiring certain assets of Allied-Bruce in December 2000, or when the Formosan addendum was issued to Plaintiffs in January 2005. (Doc. 14-1 at 1). While Stroh's declaration lists discrete periods during which he did not hold

the position as designated certified operator for the branch office that serviced Plaintiffs' home, he has not alleged that he never served as the designated certified operator for the branch during the period during which Plaintiffs' home was being serviced by Terminix. For instance, there is absolutely nothing in Stroh's declaration that indicates that he was not the certified operator for the subject branch office in 2006, 2007, 2008, 2009, 2010, 2011 or 2012, when the extensive termite damage was discovered at Plaintiffs' home. Thus, Stroh's testimony that he was not the certified operator during parts of 1999, 2000, and 2005 is non-dispositive and does not refute the allegations in Plaintiffs' complaint. If anything, Stroh's affidavit merely creates a dispute which must be resolved in Plaintiffs' favor.[10]

Defendants also argue that Plaintiffs "overstate and mischaracterize the [applicable] regulations[, which] do not, as claimed by plaintiffs, establish some obligation by Mr. Stroh to personally ensure the quality of every termite service performed out of the Mobile office. Nor do the regulations create some

---

[10] In considering a claim of fraudulent joinder, the court must normally assume all the facts as set forth by the plaintiff to be true. See Burden v. General Dynamics Corp., 60 F.3d 213, 217 (5th Cir. 1995). "[T]he district court should not conduct a full-scale evidentiary hearing on questions of fact, but rather should make a summary determination by resolving disputed facts in favor of the plaintiff." Id.

personal liability on the part of Mr. Stroh for any alleged deficiency in a termite job handled out of that office." (Doc. 14 at 3). Defendants further claim that "[n]owhere do plaintiffs assert that Mr. Stroh was personally involved with the allegedly deficient services performed at plaintiffs' home. There is no basis in the regulations or otherwise for claiming that simply holding the position of certified operator, in and of itself, renders an individual personally liable for the services." (Id. at 3-4).

First, as discussed above, Plaintiffs have alleged Stroh's personal involvement with the allegedly deficient pest control services performed at Plaintiffs' home. Plaintiffs have also alleged Stroh's personal knowledge of the negligent performance of pest control services at Plaintiffs' home by the technicians that he supervised. Plaintiffs have alleged that Stroh was aware of and helped create a system that encouraged a pattern of deficient annual inspections, and Plaintiffs have alleged that Stroh's failure to implement and enforce quality control procedures related to the pest control services being performed on their home resulted in their damages. (Doc. 1-1 at 9-10).

Second, while Defendants insist that Stroh has no statutory or regulatory duty to oversee, supervise, or ensure the quality of pest control work performed on Plaintiffs' home, the Court notes that neither Defendants nor Plaintiffs have pointed the

Court to any case in which individual liability under Alabama's Termite Code and its implementing regulations has been addressed, nor have they provided the Court with cases from other jurisdictions addressing individual liability under similar statutes and regulations. The Court's own research has likewise failed to locate helpful authority on these issues.

A dearth of decisions normally indicates that the applicable state substantive law is unsettled, and "remand is favored where the applicable state substantive law is unsettled." Headwaters, LLC ex rel. Head v. Dawes Lake, LLC, 2013 U.S. Dist. LEXIS 121432, *32 n.13, 2013 WL 4519198, at *7 n.13 (S.D. Ala. Aug. 26, 2013) ("any ambiguity or doubt about the substantive state law favors remand to state court") (collecting cases).[11]

---

[11] See also Wright v. American Gen. Life & Accident Ins. Co., 136 F. Supp. 2d 1207, 1212 (M.D. Ala. 2001) ("As the Eleventh Circuit explained in Crowe, if there is a conflict in the state substantive law, in evaluating the Plaintiffs' claims under fraudulent joinder analysis, 'any ambiguity or doubt about the substantive state law favors remand to state court.'" (citations omitted); Legg v. Armstrong Int'l Inc., 2012 WL 7761497, *1 (E.D. Pa. Nov. 29, 2012) (Because "[n]o appellate court in Alabama has addressed the statute of repose in the context of an asbestos claim[,] [the] court is not able to discern whether Alabama, like many states, deems the statute inapplicable to claims arising from latent illnesses, such as asbestos-related diseases. Moreover, Alabama law has not determined whether the asbestos exposure at issue in this case constitutes a 'defect' or 'deficiency' such that the statute could potentially be applicable. As such, Alabama law surrounding this statute is not settled. Rather than predict what the Supreme Court of Alabama (Continued)

While it is possible that Defendants' interpretation of their liability under the applicable statutory-regulatory scheme may ultimately prevail, that is not the issue before the Court. The Court is charged with determining only whether Stroh has been fraudulently joined, that is, whether he has been joined solely to defeat federal diversity jurisdiction. To that end, "the defendants [must] show[] by clear and convincing evidence that no Alabama court could find [that] plaintiffs' complaint[,]" as supplemented by appropriate documentation, states a claim against Stroh. *Atwood v. Weyerhaeuser USA, Inc.*, 2010 U.S. Dist. LEXIS 17554, *18, 2010 WL 749337, *6 (S.D. Ala. 2010); *accord* *Triggs*, 154 F.3d at 1287 ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.") (emphasis in original).

---

would do in deciding the applicability of the statute of repose, the Court will also remand this issue for determination by the transferor court." (citation omitted)); *Salomon v. Massachusetts Mut. Life Ins. Co.*, 2012 U.S. Dist. LEXIS 45018, *5, 2012 WL 1079843, at *2 (D. Or. Mar. 30, 2012) ("Given the fraudulent joinder standard at issue here, it is unnecessary for me to determine the applicability of [Oregon's statute of repose] to this action. Suffice it to say, any failure to state a claim against Mr. Miller due to this repose statute is not 'obvious' under 'settled' Oregon law. That conclusion answers the fraudulent joinder question." (footnote omitted)).

For each of the reasons discussed herein, Defendants have not met this burden. See, e.g., Matthews v. Kindred Healthcare, Inc., 2005 U.S. Dist. LEXIS 38295, *10, 2005 WL 3542561, *3-4 (W.D. Tenn. Dec. 17, 2005) ("Plaintiff contends that the statutes and regulations in question, with which Shrader is required to comply, establish a duty and a standard of conduct for nursing home administrators. The Court has found no reported Tennessee cases, and the parties have cited none, addressing the duty of care that a nursing home administrator owes to the facility's residents. Nevertheless, the Court is unwilling to conclude that there is no reasonable basis for the Tennessee courts to hold that a nursing home administrator owes a duty to the residents of that facility to provide adequate care through compliance with applicable statutes and regulations. Consequently, the Court finds that there is a colorable basis for predicting that the plaintiff could recover against Shrader, and that he was not fraudulently joined."); Kohl v. American Home Prods. Corp., 78 F. Supp. 2d 885, 892 (W.D. Ark. 1999) ("Given the statutory provisions discussed above, we disagree with the defendant manufacturers' assessment of Arkansas law and believe a cause of action against the pharmacies is cognizable. At this point, the sole question we are considering is whether the pharmacy defendants have been fraudulently joined. To avoid the conclusion that they were

fraudulently joined, there need only be a possibility that a right to relief exists under the law and all ambiguities in state law are to be resolved in favor of plaintiff.").

As discussed above, "[t]he burden of the removing party is a 'heavy one.'" Crowe, 113 F.3d at 1538. "If there is even a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Id. (emphasis added). While Defendants have presented an affidavit from Stroh stating that he was not the "certified operator" for the Terminix office servicing Plaintiffs' home during the relevant time period alleged in the complaint, that is a matter that Plaintiffs dispute. Moreover, to the extent that Defendants argue that there are uncertainties about Stroh's duties under substantive state law, those uncertainties must be resolved in favor of the Plaintiff. Id. Based on the facts alleged by Plaintiffs in the complaint, Defendants have failed to satisfy their burden of proving that there is no possibility that Plaintiffs can prove a cause of action against Stroh for negligence in the performance of his common law and/or statutory duties related to the pest control services provided to Plaintiffs by Terminix's technicians. Consequently, Defendants have failed to prove that Defendant Stroh was fraudulently joined, and this case lacks

complete diversity. Based on the foregoing, Plaintiffs' Motion to Remand is due to be granted.[12]

### III. Conclusion

For the reasons discussed herein, the undersigned **RECOMMENDS** that Plaintiffs' Motion to Remand (Doc. 8) be **GRANTED**, and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate

---

[12] Having found based on the facts of this case that remand is warranted, the Court **DENIES** as moot Plaintiffs' motion to take judicial notice of Dickinson v. The Terminix International Company, LP, et al., Civil Action No. 13-00631-CG-N. (Doc. 21).

Judge is not specific.

**DONE** this the **25th** day of **April, 2014.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**